Green, J.
delivered the opinion of the court.
This is an action of ejectment, for lot No. 81, in the Town of Franklin.
It appears from the bill of exceptions, that James McAlister was entitled to one individual fifth part of said lot, and that, on the 1st day of June, 1837, being then an infant, the said James McAlister conveyed his interest in said lot, to Henry Baldwin jr. for the consideration expressed, of $1000, which conveyance concludes as follows:
*122 “The conditions of the above conveyance are such, that whereas the said James McAlister is about opening an account with the firm of Anders'on & Baldwin, for goods, wares, merchandize, and other things, on which the said Anderson & Baldwin have agreed to give a credit of two years from the date hereof, and if the said James McAlister shall pay and discharge at the end of two years from this date, all the account or accounts which he may at that time owe the said Anderson & Baldwin, then the above conveyance shall be void, and of no effect; otherwise to be and remain in full force and virtue: and if the said McAlister shall be able to sell his interest in said property for more than $1000, he shall have the privilege of doing so, within said two years, provided he pays said Anderson & Baldwin their account against him, but not otherwise. And if the said Henry Baldwin jr., on failure of the last above condition, shall, at the end of two years of the date hereof, or at the attaining of lawful age of the said James McAlister, or afterwards, discharge the said McAlister of the debt or debts he may owe the said Anderson & Baldwin, and pay him the difference between those debts, and $1000 dollars, then the said Henry Baldwin jr. shall have the title to the said McAlis-ter’s interest in said property — absolutely in fee simple.” “in testimony, &c.”
The said James McAlister became of full age in February, 1840.
The plaintiff, McGan, having a judgment against Henry Baldwin jr., on the 23rd of November, 1840, filed his bill against Baldwin and McAlister, to subject the interest of Baldwin in the premises in dispute, to the satisfaction of his said judgment. It appears upon the hearing, that McAlister owed upon the mortgage upwards of $900, and the court decreed that his interest in the said lot 81, be sold to satisfy McGan’s judgment against Baldwin. On the 16th of January, 1843, the Clerk and Master proceeded to sell said lot, and McGan became the purchaser. At the April term, 1843, the court confirmed this sale, and decreed that the title to the premises be vested in McGan.
On the 29th of March, 1841, the said James McAlister, con *123 veyed his interest, in said lot, No. 81, to Alexander C. Carter, in trust, to secure the payment of certain debts therein named; and in which deed, is an assignment of all his estate for the benefit of his creditors.
Henry Eelbeck and B. S. Tappan, had each recovered a judgment against James McAlister, at the July term, 1840, of the Williamson Circuit Court, and executions on these judgments were levied on the lot in question, one on the 29th of March, 1841, and the other, on the 22nd of May, 1841 — and all the interest of James McAlister in said lot was sold, and the defendant Marshall became the purchaser, and took a deed from the Sheriff for the same.
On the 20th February, 1840, Mary F. Baldwin, wife of Henry Baldwin jr., filed her bill in the Chancery Court at Franklin, against creditors of said Henry Baldwin jr., enjoining the-sale of said lot No. 81, (which had been levied on by virtue of executions, in favor of the said creditors,) claiming the same as her separate estate. Henry Baldwin jr. was made a party to the bill of the said Mary F., but James McAlister was no party. At October term, 1841, of the,said court, a decree was made, directing the interest of Baldwin, in said lot, to be sold, which was done by the Clerk and Master, and the defendant Marshall became the purchaser. At the April term, 1842, the said sale was confirmed by the court, and the title vested in the purchaser.
On the 10th of January, 1840, an execution in favor of Robert M. House, against Henry Baldwin jr., was levied on said lot, No. 81, as the property of said Baldwin.
At the time the deed of trust was executed by McAlister to Carter, the receiver, in the suit of Mary F. Baldwin vs. Henry Baldwin jr. was in possession of the lot, No. 81, under an interlocutory order in said cause.
The court charged the jury in substance, that the deed from McAlister to Baldwin, though executed when he was an infant, was not void, but was voidable only: “That the legal effect of that deed, was more than a mere mortgage:- — it not only pro vided for securing the account intended to be raised, but it was an absolute conveyance to Baldwin.”
*124 The jury found for the defendant, and the plaintiff appealed to this court.
1. The first question to be considered is, whether his Honor charged the law correctly, when he told the jury that the .deed from McAlister to Baldwin, was an absolute conveyance. And we, think it most clear that he did not.
The deed states, that it is made upon condition, that if, within two years, McAlister should pay the account he was about to create with Anderson & Baldwin, it was to be void: — that McAlister should have two years within which he was at liberty to sell his interest in said property for $1000, provided he should pay Anderson & Baldwin their account against him— or, if neither of these conditions should be performed, then Baldwin was to be at liberty to discharge McAlister from his liability to Anderson & Baldwin, and to pay the difference between their debt and $1000 — and thereupon he was to have the title absolutely, in fee simple.
In 4, Kent’s Commentaries, 142, it is said; “In equity the character of the conveyance is determined by the clear and certain intention of the parties, and any agreement in the deed, or in a separate instrument, showing that the parties intended the conveyance should operate as a security for the repayment of the money, will make it such, and give to the mortgagor the right of redemption.” And again, page 148; “An agreement, at the time of the loan to purchase for a given price, in case of default, is not permitted to interfere with the right of redemption.”
Now, unquestionably, this deed was intended by the parties as a security for the money McAlister might owe for the purchase of goods, within two years. And by the express provisions of the deed, if the bargainor should pay for the goods within two years, the deed was to be void. Words more appropriate, to create a security for the payment of the money for which McAlister might become liable, could scarcely be used — and if a security, the mortgagor has the right of redemption.
The subsequent condition, containing a stipulation, that at the end of two years, Baldwin might purchase the lot for $1000, *125 \vc have seen, cannot be permitted to interfere with the right of redemption, 4 Kent’s Com. 143. For if such agreement were allowed, “It would throw open a wide door to oppression, and enable the creditor to drive an inequitable and hard bargain with the debtor, who is rarely prepared to discharge his debt at the specific time.” Coote oil Morí. 13, top page, 18 Law Lib.
This deed is, therefore, not absolute, but is a security for the payment of such debt as the mortgagor might create with Anderson & Baldwin, for goods; and the condition that the title should rest absolutely in Baldwin, on his payment of a thousand dollars at the end of two years, cannot be permitted to interfere with the right of redemption.
2nd. It is insisted for the defendant in error, that the deed of Baldwin is void, and not voidable only, and that the title was in McAlister, whenthejudgmentsofEelbeckand Tappan were obtained against him in July, 1840, at which time he wras of lawful age, and consequently that the defendant’s purchase at the execution sale, made by virtue of said judgments, vested in him a good title.
We do not hold the deed of an infant to be absolutely void. It is for his interest in most cases, that it should be voidable only, at his election, and the tendency of modern decisions is, greatly to limit the cases in which the contract of an infant shall be void. In the case of Wheaton vs. East, 5 Yerg. R. 59, this court held, that the deed of an infant, executed by him for the sale of his land, was only voidable, at his election. The rule there stated, is, “That when the court can pronounce the contract to be to the infant’s prejudice, it is void, and when to his benefit, as for necessaries, it is good; and when the contract is of an uncertain nature as to benefit or prejudice, it is voidable only, at the election of the infant.”
The counsel for the defendant insist, that the contract in this caso, was to the prejudice of the infant, as is shown by the character of his dealing with Anderson & Baldwin. The court cannot look out of the instrument, to determine this question. The deed, if void, was void the moment it was executed, and if at that lime, it was only voidable, proof of the sub *126 sequent application of the consideration received by the infant injudiciously, cannot render it void.
From the face of this deed, we cannot see that it was to the prejudice of the infant. It is a mortgage to secure payment for goods to be purchased, and which were to be paid for in two. years. We cannot see but that such arrangement as this, might be beneficial to the infant, to enable him to obtain necessaries; nor could it be known at the time he made the deed, that he would purchase any article that was not necessary. Besides, he would have a right to redeem the mortgage at the end of two years; and in the settlement of the account, to disallow any item which he may have been permitted unadvisedly to purchase. We think, therefore, that if an infant may sell his land, and the deed is only voidable, as in Wheaton vs. East, there is no reason why this mortgage should be held to be void.
3rd. It is insisted that McAlister avoided the mortgage to Baldwin, by his deed of trust to Cartcf, dated 24th'March, 1841, after he arrived of full age.
It is certainly true, that an infant may disaffirm his voidable deed, by an act equally solemn after he becomes of age; such as the execution of another deed to a third person for the same property. 11 Jh. Rep. 539: 14 Jh. Rep. 124: 10 Peters’ R. 75: 2 Dev. & Bat. 320: 17 Wend. R. 119: 2 Kent’s Com. 238. But this must be understood, of absolute deeds, inconsistent with each other, thereby making it manifest that it was the intention of the party to disaffirm the former deed. But a subsequent mortgage, or deed of trust, is not inconsistent with the former one. It may be, that the estate is of value, greatly beyond the debt secured by the first mortgage. In such case, the second mortgage would obtain the benefit of such additional value; and the execution of such mortgage, by a party who had, during infancy, executed a prior mortgage, would not indicate an intention to disaffirm such mortgage. For this reason alone, we are satisfied that the deed of trust to Carter is no disaffirmance of the mortgage to Baldwin.
But the deed to Carter was executed while McGan’s bill, against Baldwin and McAlister, for the foreclosure of the mortgage was pending, and while the receiver iu the case of Mary *127 F. vs. Henry Baldwin et als, was in possession of the lot. The deed of trust for this lot, was therefore void, and conveyed no title to Carter. Grider vs. Payne, 9 Dana 120: 1 Jh. Ch. Rep. 567. And if void as a conveyance, it could not operate to dis-affirm the prior deed, though it might be, if valid, inconsistent with it.
4th. The defendant in error acquired no title to this lot by. his purchase under the decree, in the case of Mary F. vs. Henry Baldwin. To this bill McAlister, the mortgagor, was no party. Baldwin had no interest in this lot, except as a security for his debt. The debt is the principal, and the land is only an incident. The sale, under that decree, of Baldwin’s interest in the land, did not carry the debt with it; for to hold' this, would be to assume that the transfer of the incident would operate to transfer the principal, a manifest absurdity.
This sale, therefore, transferred no title to the purchaser, and did not interfere with the right of McGan to obtain his decree of foreclosure and sale, whereby he obtained all the interest of the mortgagor and mortgagee both, to the land in dispute.
Reverse the judgment, and remand the cause for another trial to be had therein.